**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| TANYA BROWN, | : | Jury Trial Demanded |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civil Action No. |
| COMMUNITY COLLEGE OF | : | |
| PHILADELPHIA; COMMUNITY | : | |
| COLLEGE OF PHILADELPHIA | : | |
| FOUNDATION d/b/a PHILADELPHIA | : | |
| COMMUNITY COLLEGE | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, TANYA BROWN ("Plaintiff" or "Brown"), by and through undersigned counsel, brings this Civil Action Complaint against Defendants, COMMUNITY COLLEGE OF PHILADELPHIA ("CCP"), COMMUNITY COLLEGE OF PHILADELPHIA FOUNDATION ("CCPF"), and COMMUNITY COLLEGE OF PHILADELPHIA CHILD DEVELOPMENT CENTER ("CCPCDC") (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE CASE**

1. Plaintiff brings this action pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1100 et seq. ("PFPO"), to remedy unlawful disability discrimination, failure to accommodate, hostile work environment, unlawful medical examinations, retaliation, and constructive discharge.

2. Plaintiff seeks damages and equitable relief arising from Defendants' discriminatory and retaliatory conduct based upon Plaintiff's disability, perceived disability, and record of disability.

3. Specifically, Defendants failed and refused to reasonably accommodate Plaintiff's disabilities, subjected Plaintiff to discriminatory and hostile working conditions, imposed unnecessary medical examinations, retaliated against Plaintiff for engaging in protected activity, and ultimately forced Plaintiff to resign from her employment.

## JURISDICTION AND VENUE

4. Jurisdiction of this action is conferred upon this Court pursuant to federal question jurisdiction under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., and 28 U.S.C. § 1331.

5. This Court also has supplemental jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of Pennsylvania because Plaintiff was employed by Defendants and worked in Philadelphia, Pennsylvania, where the discrimination, failure to accommodate, harassment, retaliation, hostile work environment, unlawful medical examinations, and constructive discharge occurred.

7. On or around June 26, 2024, Plaintiff, Tanya Brown, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants alleging disability discrimination, failure to accommodate, hostile work environment, retaliation, and constructive discharge.

8. Plaintiff's Charge of Discrimination was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

9. Plaintiff's Charge of Discrimination was additionally dual-filed with the Philadelphia Commission on Human Relations ("PCHR").

10. Plaintiff's rights under the Philadelphia Fair Practices Ordinance and applicable state law are therefore properly before this Court.

11. On or around February 9, 2026, the EEOC issued Plaintiff a Dismissal and Notice of Rights advising Plaintiff that any civil action must be commenced within ninety (90) days of receipt.

12. Plaintiff has timely commenced this action within ninety (90) days of receipt of the EEOC's Dismissal and Notice of Rights.

## PARTIES

13. Plaintiff, TANYA BROWN (hereinafter referred to as "Plaintiff" or "BROWN"), is an adult individual residing in Philadelphia, Pennsylvania.

14. At all times material, Plaintiff was employed by Defendants in Philadelphia, Pennsylvania.

15. Defendant, COMMUNITY COLLEGE OF PHILADELPHIA ("CCP"), is a public educational institution organized and operating under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1700 Spring Garden Street, Philadelphia, Pennsylvania 19130.

16. Defendant, COMMUNITY COLLEGE OF PHILADELPHIA FOUNDATION ("CCPF"), is a nonprofit organization operating within the Commonwealth of Pennsylvania with a principal place of business located at 1700 Spring Garden Street, Philadelphia, Pennsylvania 19130.

17. At all times material, Defendants employed the requisite number of employees necessary to subject them to liability under the ADA and PFPO.

18. At all times relevant to this Civil Action, Defendants acted as Plaintiff's employers, joint employers, and/or integrated enterprise employers and controlled the terms, conditions, privileges, and benefits of Plaintiff's employment.

## MATERIAL FACTS

19. Plaintiff began her employment for Defendants as a Counselor in 2009.

20. At all relevant times, Plaintiff was an individual woman who is sixty (60) years of age and suffers from a disability.

21. At all relevant times, Plaintiff was qualified for her position and performed her duties at a level that met or exceeded the Defendant's reasonable expectations.

22. However, in 2018, began a four-year period of extended disability.

23. Plaintiff required this period of disability as a result of multiple diagnosis, including stroke, asthma, and chronic post-concussion syndrome.

24. These conditions impair and substantially limit plaintiffs ability to perform one or more major life activities, including working, breathing, moving, concentrating, socializing.

25. These conditions negatively affected Plaintiff's respiratory, and cognitive, and mental health functions.

26. Plaintiff has a history of these conditions.

27. Plaintiff has received treatment for these conditions and is perceived as being affected by these conditions.

28. The Plaintiff is disabled, as defined by the ADA.

29. Plaintiff has a history of disability, as defined by the ADA.

30. Plaintiff is perceived as disabled, as defined by the ADA.

31. While on this period of extended disability, Plaintiff sued Defendant for unlawfully interfering with her right to receive the disability payments to which she was entitled.

32. Plaintiff also filed a compliant with EEOC and other appropriate state and local agencies regarding the Defendant's interference with her rights.

33. The matter was resolved in 2021.

34. On or about November 1, 2021, Plaintiff's period of temporary disability ended and Plaintiff returned to work.

35. Although Plaintiff's symptoms had improved, Plaintiff provided medical documentation demonstrating that her health condition limited her ability to perform her duties in noisy, hot, or poorly ventilated environments.

36. Plaintiff presented Defendant medical documentation indicating Plaintiff needed the Defendant to allow her to work from home ("WFH") as a reasonable accommodation for her disability.

37. The accommodation was reasonable.

38. Since work from home had become common during the 2020 COVID 19 pandemic, the Defendant had allowed many employees to WFH.

39. Initially, Plaintiff's supervisor approved Plaintiff's request to WFH.

40. However, within a few weeks of returning to work, Defendant abruptly withdrew the accommodation approval.

41. Instead of accommodating Plaintiff, Plaintiff's supervisor advised Plaintiff that Plaintiff either had to return to work in the office or resign.

42. Plaintiff's office had a malfunctioning HVAC system and was poorly ventilated.

43. Plaintiff's office was frequently hot, due to the malfunctioning HVAC.

44. Plaintiff's office was frequently noisy.

45. These conditions limited Plaintiff's ability do perform her duties because of her disability.

46. Plaintiff again provided medical documentation demonstrating her need to work from home as an accommodation for her disability.

47. The medical documentation clearly identified the Plaintiff's disability.

48. The medical documentation clearly identified how the disability limited Plaintiff's ability to perform her duties.

49. The medical documentation clearly stated that WFH was a necessary medical accommodation.

50. There was no reason for the Defendant to doubt the validity of the medical documentation Plaintiff provided from her physician.

51. Defendant did not present any explanation or reason for which it doubted the validity of Plaintiff's medical documentation.

52. Defendant did not identify any lack of clarity in the medical documentation.

53. Nonetheless, Defendant required Plaintiff to undergo two IMEs.

54. Defendant's decision to require Plaintiff to undergo an IME under these circumstances was in violation of the ADA.

55. Plaintiff provided Defendant records of her neuropsychiatric evaluation, which demonstrated her need for the WFH accommodation.

56. In response, Defendant excused Plaintiff from attending certain work-related events, but did not allow her to WFH.

57. Plaintiff  requested Employer allow her to work in an office in a different building on the Defendant's campus, which had a functioning HVAC system and less ambient noise.

58. Defendant's Director held an interactive process meeting to consider this request.

59. At the meeting, the Director approved the request to work from an office within a different building.

60. However, days later, the Director called Plaintiff and withdrew the approval.

61. The Director stated that the approval was denied because, despite medical documentation to the contrary, the Director did not believe Plaintiff's office was noisy enough to trigger a need for accommodation.

62. Director told Plaintiff that if Plaintiff was unable to work in the office she was assigned, that Plaintiff would have to resign.

63. At the same time Defendant refused Plaintiff's request to WFH as an accommodation, it allowed other Counselors to WFH.

64. Defendant's refusal to reasonably accommodate Plaintiff aggravated Plaintiff's condition.

65. As a result of her aggravated symptoms, Plaintiff required multiple periods of medical leave between her return from her initial leave and her separation from employment in October 2023.

66. Defendant began subjecting Plaintiff's requests for time off to a different process than other employees.

67. While Counselors typically received approval for time off through supervisors, Defendant required Plaintiff to obtain approval from HR.

68. Plaintiff informed Defendant that she believed the Defendant was taking adverse employment action against her because of her disability and in retaliation for her having exercised her rights under ADA and PRF.

69. Defendant did not investigate Plaintiffs report nor did it take any action to stop the alleged conduct.

70. Defendant unlawfully failed to engage in the required interactive process to determine what reasonable accommodations may be available.

71. In March 2023, Plaintiff returned from a period of medical leave.

72. Upon her return, Plaintiff found that Defendant had provided all employees, except for Plaintiff, new laptops.

73. Not only had Defendant excluded Plaintiff from receiving a new work laptop, but Plaintiff found her assigned laptop was missing entirely from her office.

74. Defendant provided Plaintiff no explanation as to why her laptop was missing.

75. Defendant eventually agreed to provide Plaintiff with a new laptop.

76. Plaintiff requested a laptop with an 18-inch screen, due to her poor eyesight.

77. Defendant again refused to accommodate Plaintiff's reasonable request for an accommodation.

78. For about a month, Defendant provided Plaintiff no laptop to use for work.

79. During this time, Plaintiff had to use her personal laptop in order to perform her essential job duties.

80. Ultimately, Defendant provided Plaintiff a laptop with a 13-inch screen, which was too small for Plaintiff to use effectively given her impaired vision.

81. Plaintiff's continued to require periodic medical leave due to the Defendant's refusal to reasonably accommodate based on her.

82. Plaintiff's supervisor commented that Plaintiff's need for medical leave indicated that she "did not want to work."

83. The supervisors, directors, and managers mentioned above acted within the course of their duties in their employment for the Defendants.

84. The supervisors, directors, and managers described above are agents of the Defendants.

85. The Defendants are answerable to the Plaintiff for the unlawful conduct of their agents under *Respondeat Superior*.

86. The conduct of the Defendants and their agents described above negatively changed the terms and conditions of Plaintiff's employment.

87. The conduct of the Defendants and their agents constitutes adverse employment action.

88. The Defendants and their agents took these adverse employment actions against Plaintiff because of her disability.

89. The Defendants and their agents discriminated against Plaintiff with respect to her employment because of her disability.

90. The discriminatory conduct was severe.

91. The discriminatory conduct was pervasive.

92. The discriminatory conduct constitutes harassment.

93. The discriminatory conduct altered the conditions of employment such that a reasonable person with Plaintiff's disability would find the work environment hostile, intimidating, and intolerable.

94. The discriminatory conduct constitutes a hostile work environment.

95. The discriminatory conduct was such that a reasonable person with Plaintiff's condition would feel compelled to resign.

96. The Plaintiff's ultimate resignation from the position constitutes a constructive discharge.

## AS A FIRST CAUSE OF ACTION FOR DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

97. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

98. The Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), prohibits discrimination against qualified individuals on the basis of disability.

99. Plaintiff is an individual with disabilities within the meaning of the ADA, including but not limited to stroke-related impairments, asthma, chronic post-concussion syndrome, neurological impairments, and related medical conditions, which substantially limit one or more major life activities.

100.    At all times material hereto, Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

101.    Defendant discriminated against Plaintiff because of her disability, perceived disability, and/or record of disability by, among other things, denying reasonable accommodations, subjecting Plaintiff to disparate treatment, imposing heightened scrutiny, requiring unnecessary medical examinations, subjecting Plaintiff to hostile working conditions, and constructively discharging Plaintiff.

102.    Defendant's conduct violated the ADA.

103.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered economic damages, emotional distress, humiliation, worsening medical conditions, and other compensable injuries.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

104.    Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

105.    The ADA prohibits retaliation against employees who engage in protected activity.

106.     Plaintiff engaged in protected activity by requesting accommodations, providing medical documentation, taking protected medical leave, asserting rights under the ADA, and complaining about discriminatory conduct.

107.     Following Plaintiff's protected activity, Defendant subjected Plaintiff to adverse employment actions, including but not limited to denial of accommodations, heightened scrutiny, different leave approval procedures, hostile treatment, unnecessary medical examinations, and constructive discharge.

108.     Defendant's retaliatory conduct was causally connected to Plaintiff's protected activity.

109.     Defendant's conduct violated the ADA.

110.     As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered economic damages, emotional distress, humiliation, and other compensable injuries.

## AS A THIRD CAUSE OF ACTION
## FOR FAILURE TO ACCOMMODATE UNDER THE
## AMERICANS WITH DISABILITIES ACT

111.     Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

112.     The ADA requires employers to provide reasonable accommodations to qualified individuals with disabilities unless doing so would impose an undue hardship.

113.     Plaintiff was an individual with disabilities within the meaning of the ADA.

114.     Defendant was aware of Plaintiff's disabilities and need for accommodation.

115.     Plaintiff was qualified to perform the essential functions of her position with reasonable accommodation.

116.    Plaintiff requested reasonable accommodations, including but not limited to remote work, reassignment to a quieter workspace, and workplace equipment accommodations.

117.    Defendant failed to engage in the interactive process in good faith.

118.    Defendant failed and refused to reasonably accommodate Plaintiff's disabilities.

119.    Instead of accommodating Plaintiff, Defendant subjected Plaintiff to adverse employment actions and constructively discharged Plaintiff from employment.

120.    Defendant's conduct violated the ADA.

121.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered economic damages, emotional distress, humiliation, worsening medical conditions, and other compensable injuries.

**AS A FOURTH CAUSE OF ACTION
FOR AGE DISCRIMINATION UNDER THE
AGE DISCRIMINATION IN EMPLOYMENT ACT**

122.    Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

123.    The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), prohibits discrimination against employees who are forty (40) years of age or older.

124.    At all relevant times, Plaintiff was over the age of forty and was a member of the protected class under the ADEA.

125.    Defendant discriminated against Plaintiff because of her age by subjecting Plaintiff to disparate treatment, hostile working conditions, heightened scrutiny, denial of accommodations, and constructive discharge.

126.    Defendant's conduct violated the ADEA.

127.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered economic damages, emotional distress, humiliation, and other compensable injuries.

### AS A FIFTH CAUSE OF ACTION
### FOR DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, RETALIATION, AND HOSTILE WORK ENVIRONMENT UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT

128.     Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

129.     The Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), prohibits discrimination, retaliation, and harassment in employment on the basis of disability and age.

130.     Defendant discriminated and retaliated against Plaintiff because of her disabilities, perceived disabilities, record of disability, and age.

131.     Defendant failed to reasonably accommodate Plaintiff's disabilities and subjected Plaintiff to hostile and discriminatory working conditions.

132.     Defendant's conduct culminated in Plaintiff's constructive discharge.

133.     Defendant's conduct violated the PHRA.

134.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered economic damages, emotional distress, humiliation, worsening medical conditions, and other compensable injuries.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE,**
**RETALIATION, AND HOSTILE WORK ENVIRONMENT UNDER THE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

135.    Plaintiff hereby incorporates each and every allegation contained in the preceding

paragraphs of this Complaint as though fully set forth herein.

136.    The Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1100 et seq.

("PFPO"), prohibits discrimination, retaliation, and harassment in employment on the basis of

disability and age.

137.    Defendant discriminated and retaliated against Plaintiff because of her disabilities,

perceived disabilities, record of disability, and age.

138.    Defendant failed to reasonably accommodate Plaintiff's disabilities and subjected

Plaintiff to hostile and discriminatory working conditions.

139.    Defendant's conduct culminated in Plaintiff's constructive discharge.

140.    Defendant's conduct violated the PFPO.

141.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff

suffered economic damages, emotional distress, humiliation, worsening medical conditions, and

other compensable injuries.


**JURY DEMAND**

Plaintiff requests a jury trial on all issued to be tried.


**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally,

in an amount to be determined at the time of trial plus interest, punitive damages, liquidated

damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

Very Truly Yours,

*/s/ Samuel C. Wilson, Esq.*
Samuel C. Wilson, Esquire

DATED: May 11, 2026